IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| SONIA PALACIOS, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | CIVIL ACTION NO._____ |
| THE GAP, INC. A/K/A GAP, INC., D/B/A GAP, GAP KIDS AND BABY GAP, | § § § § | |
| | § | Jury Demanded |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

Plaintiff Sonia Palacios (Hereafter "Sonia") in the above numbered and entitled case, complains of The Gap, Inc., A/K/A Gap, Inc., D/B/A Gap, Gap Kids and Baby Gap, Defendant in the above numbered and entitled case, and for cause(s) of action would respectfully show unto the Court and jury as follows:

### I. PARTIES

1. Plaintiff, Sonia Palacios, is a Hispanic Female and a citizen of the United States. Plaintiff is a resident of the County of Hidalgo, State of Texas and at all pertinent times she was a resident of Hidalgo County, Texas.

2. Defendant, The Gap, Inc., A/K/A Gap, Inc., D/B/A Gap, Gap Kids and Baby Gap, was an employers in McAllen, Hidalgo County, Texas at the time the alleged acts of discrimination occurred. At all times relevant hereto, Defendant engaged in an industry affecting commerce. The Gap, Inc., A/K/A Gap, Inc., D/B/A Gap, Gap Kids and Baby Gap is, on information and belief, a corporation with a place of business at Two Folsom Street San Francisco California and can be served through its registered agent for service of process, CT CORPORATION SYSTEM, 1999

1

Bryan St., STE 900 Dallas, TX 75201.

## II. JURISDICTION

3.     The jurisdiction of the Court is invoked pursuant to Title VII of the Civil Rights Act of 1964, Section 701 *et. seq.*, as amended, 42 U.S.C.A. 2000e, *et. seq.*, 42 U.S.C. Sec. 2000e-5(f)(3), 42 U.S.C. § 2000e-2(a), 42 U.S.C. § 2000e(k), Family Medical Leave Act (FMLA), 29 U.S.C. Sec. 2601 *et seq.*, The Americans with Disabilities Act of 1990 (ADA) and The Americans with Disabilities Act Amendments Act of 2008 (ADAAA). This action also arises under the Texas Commission on Human Rights Act, Texas Labor Code, Sections 21.051, *et. seq.* (Discrimination by Employer), Sec. 21.055 (retaliation), Sec. 21.105 (Disability Discrimination), Sec. 21.125 and Sec. 21.128.

## III. VENUE

4.     Venue is appropriate in this District pursuant to 28 U.S.C. §1391 in that a substantial part of the events or omissions giving rise to the claim occurred in this Judicial District. Furthermore, the Defendants maintain sufficient business contacts in one or more counties comprising this Judicial District and the McAllen Division.

## IV. FACTS

5.     Sonia has been employed with the Defendant from on or about March 1, 2012 to the present. At the time of hire, Sonia was promised a Level 12 Brand Manager Position after Sonia completed a three month course on merchandise training.

6.     Sonia was then told in the mid-year of 2012, that the merchandise training would take place in January 2013.  However that never happened. Sonia was never allowed to complete a three month course for merchandise training.

7.     Throughout the course of Sonia's employment with Defendant she has never had

any performance issues. Nothing negative has ever been documented regarding her work performance and no one has ever approached Sonia about unacceptable work performance. Sonia has held various manager positions with Defendant during the time period that is the subject matter of the present complaint.

8. On or about January 2013, approximately only a week after telling her manager Ashley Vargas that she was a month pregnant, Sonia's position was posted online for the exact position that Sonia held. Employees from other stores contacted Sonia and asked her about her position that was posted online, and Sonia found this to be very stressful.

9. As a result, of Ms. Vargas's discriminatory behavior and comments Sonia felt that her job was in jeopardy. Sonia contacted Human Resources and notified them about her position and that is when they removed it from the internet. However, Sonia's position was posted on "Monsters.com" from on or about January 2013 to on or about March 2013. After contacting Human Resources, Sonia was told by the General Manager, Ashley Vargas, and Acting District Manager, Dee Silva, was looking for an assistant for Sonia because Sonia was pregnant. However, that was not true. The position posted online was removed only after Sonia contacted HR.

10. Soon after contacting HR, regarding the harassing discriminatory behavior of Sonia's management team, Sonia was retaliated against by intentionally being forced to work 12 to 16 hour work days. Ms. Vargas would always intentionally tweak Sonia's schedule so that it was impossible for her to get her proper rest or breaks. Sonia's doctor noted that she could no longer work heavy hour days, that Sonia could only work 8 hour shifts and could no longer lift, push, or carry anything over 10lbs due to her condition. Due to managements unrelenting discriminatory and retaliatory behavior Sonia was then forced to work 7 to 8 days consecutively without a day off and forced to work until midnight while having to go to work the very next day

at 7 am.  As a result, Sonia would wake up to get ready for work at approximately 5 am and she would go to work with her feet beyond swollen which lead to exhaustion, dehydration, and hospital visits.

11.     Sonia was also not allowed to take the allotted breaks recommended by her doctor or by the Texas labor laws. Sonia was constantly being bullied by having her job threatened everyday by Ms. Vargas's comments. In addition, Ms. Vargas always had a negative attitude towards Sonia. Ms. Vargas intentionally stopped communicating all important events and store visits to Sonia in an attempt to set Sonia up for failure. The above stated hostile actions were continuously taken against Sonia from on or about February 2013 to until on or about May 8, 2013. Working in a hostile environment was very stressful for Sonia's child and Sonia.  After Sonia fell ill in the hospital, due to exhaustion, her doctor then placed Sonia on numerous weeks of bed rest throughout the remaining months of her pregnancy.

12.     Between April 2013 and May 2013, Sonia was threatened that the Regional Manager would be making a visit to fire "certain" people which added additional stress to Sonia's already hostile environment. Ms. Vargas would imply that Sonia was one of those 'certain' people and that if Ms. Vargas got fired she would bring everyone down with her. Sonia never understood what she meant by that.

13.     During Sonia's first trimester at approximately twelve weeks and up to the months leading up to May 2013, Sonia had horrible complications, cramping, shocks to her upper abdominal which according to the nurses and doctors was not normal. Sonia shouldn't have been feeling that type of pain, with the usual pregnancy discomforts of morning sickness etc.

14.      On or about May 8, 2013, Sonia was instructed by her physician to stop working and go on maternity leave due to the problems Sonia was experiencing and Sonia was extremely

fearful for her child's health.

15. On or about August 7, 2013, Sonia was admitted to the hospital due to no amniotic fluid and had a C-section.

16. On August 8, 2013, Sonia's son was born at 36 weeks, a month earlier than expected due to all of Sonia's stress and mental anguish. Sonia's son spent 16 days of his life in the NICU and he was born with several birth defects.

17. As previously stated, Sonia stopped working early due to her complications and the fact that she could no longer perform 80% of her job. The Defendant also denied her request for short term disability leave which caused Sonia additional stress due to not having an income.

18. Upon Sonia's return to work, after FMLA and maternity leave, on or about November 14, 2013, Sonia was transferred from the adult store to the BabyGap store with no options. Sonia was assigned menial tasks such as being in charge of receiving and storing marketing.

19. Sonia's position was given to another person before her FMLA had exhausted. Sonia's job title was changed from brand to customer service manager four times before Sonia worked her first day back and three times after.

20. Sonia was told she was a Customer Service Manager. However, Sonia was not allowed to fulfill the full duties of the Customer Service role. For example when it came to the duty of scheduling, Sonia would be told to start or complete a schedule but when Sonia was scheduled off the schedule would already be completed by Mr. Cantu or Jennifer who was instructed to do so by Mr. Cantu.

21. Sonia was bounced from the adult store to the kids store and then to the baby store. Sonia received a huge demotion with no compensation. Other managers who worked with

Sonia were offered generous raises for their move to the baby store. It was made clear that Sonia no longer held the title she had previously held and that she would no longer hold the authority she had either. From being the assistant manager Sonia was demoted to be an extra floating manager (a manager who covers lunches in other stores) with no duties. The new district manager at that time, Monica Sarfaty, also made it clear that Sonia would not be getting a raise for the lateral move and that it would be the same pay and same title but only this time Sonia would be in all three stores. Now Sonia was left even more confused as to what she was supposed to do since prior to her leave, Sonia's job was the brand manager and she was in charge of a team of 10-15 people for her department, shipments, receiving, all store moves, marketing, and assisting the general manager in all operational work but now Sonia would be an extra body with no authority and no say so in where things went because that position was already filled. If that was not humiliating enough, Sonia would be the one to end up training the manager now in her place. The new manager was Roy Canales, he and Sonia were the assistant managers at the adult store, with side by side authority but now Sonia was under Mr. Canales. Sonia was demoted and continued to be humiliated by the Defendant's discriminatory and retaliatory actions.

22.  On or about December 3, 2013, Sonia emailed Ms. Sarfaty, after Black Friday, because the days leading up were beyond busy, to get clarification on her title and position. Sonia tried to follow up with Ms. Sarfaty because her general manager didn't know what to assign to her. Ms. Sarfaty replied stating that Sonia was to be a "floating" manager."

23.  On or about December 4, 2013, Sonia emailed Heather Comtois (Human Resources Generalist) with her concerns regarding her position. Sonia also contacted HR because it was brought to her attention by another manager that her medical information had been exposed by both general managers, Dee Silva and Daisy Perez, to their teams and that they started a rumor

6

that Sonia did not know who the father of her child was. HR had previously been informed about Sonia's General Manager, Ashley Vargas, exposing Sonia's medical information and condition without Sonia's consent since February 2013.

24. Sonia then spoke to Mr. Cantu, general manager for the baby store, and told him that she contacted HR in regards to her position and responsibilities since he was unable to give her an answer as to why her position had been given away. At this point Sonia was beyond humiliated, not only had she been stripped from her position and responsibilities, but now Sonia was being linked to malicious gossip and continued to have her name slandered.

25. On or about December 5, 2013, Mr. Cantu told Sonia, in person, that Ms. Sarfaty was no longer working for the company and that their district manager would be a different person from another district. The company then tried moving Sonia back to the adult store where she would be sharing my responsibilities with another manager with her position but the acting district manager decided to keep Sonia at the baby store allegedly because she was concerned there would be some hostility since the general manager had started rumors about Sonia's son's father and Sonia. Not to mention, all of Sonia's medical information had been leaked by Dee Silva and the previous general manager to all of the associates.

26. On or about February 2014, Mr. Cantu finally sat down with Sonia to have a conversation regarding her responsibilities, four months after her first day back. Mr. Cantu stated that Sonia would be splitting the customer service role with the other manager who was offered Sonia's position but Sonia only got assigned to receive marketing and loss prevention, neither of which have anything to do with Sonia's actual title nor do they hold the same authority Sonia once held.

27. On or about February 18, 2014, Sonia filed a charge of discrimination with the

Equal Employment Opportunity Commission. After Sonia filed her EEOC charge all managers from all of Defendant's store in McAllen, including but not limited to the Kids store and BabyGap, walk on "eggshells" around Sonia. In addition, all of Sonia's colleagues have stopped communicating with Sonia. To further add to the hostile environment, said managers will call the store and ask for all other managers but Sonia when needing help or information as if Sonia is incapable of answering or lacking knowledge. Sonia is treated as pariah by the Defendant.

28. On or about March 2014, approximately five months after her return to work, Sonia learned that she did not have an employee file within her store. After questioning as to the existence of her file, the GM, Dee Silva, for the adult store stated that she never saw Sonia's file, yet Sonia's I-9 was delivered to BabyGap (which was in Sonia's file). Sonia's personnel file contained several important documents including but not limited to Sonia's medical information. As of the date of this complaint, Sonia's personnel file is still nowhere to be found. It is highly suspicious that her personnel file, which contained important documents that supported Sonia's discrimination claims, is suddenly missing.

29. Sonia was qualified for the position of Customer Service Manager (Level VII). At all relevant times, Sonia continued to be qualified to fulfill the requirements of the position, and desired to retain the position.

30. On information and belief, Sonia asserts that Defendant acted with malice and in reckless disregard of Sonia's rights and welfare.

31. On or about July 1, 2014, the U.S. Equal Employment Opportunity Commission, San Antonio District Office issued its Notice of Right to Sue for the EEOC Charge related to the subject matter of the present complaint.

## V. CAUSE OF ACTION

32. The Plaintiff incorporates the preceding and proceeding paragraphs into this paragraph by reference. The above described facts constitute retaliation and discrimination based on sex (pregnancy) and disability (disability related to pregnancy) in violation of Title VII of the Civil Rights Act of 1964, Section 701 *et. seq*., as amended, 42 U.S.C.A. 2000e, *et. seq*., 42 U.S.C. Sec. 2000e-5(f)(3), 42 U.S.C. § 2000e-2(a), 42 U.S.C. § 2000e(k), Family Medical Leave Act (FMLA), 29 U.S.C. Sec. 2601 *et seq.*, The Americans with Disabilities Act of 1990 (ADA) and The Americans with Disabilities Act Amendments Act of 2008 (ADAAA), Texas Commission on Human Rights Act, Texas Labor Code, Sections 21.051, *et. seq*. (Discrimination by Employer), Sec. 21.055 (retaliation), Sec. 21.105 (Disability Discrimination), Sec. 21.125 and Sec. 21.128. The Defendant's reasons for demoting Plaintiff are pretext for its true reason for demoting the Plaintiff which is intentionally because of sex, disability and as well as being in retaliation for Plaintiff's opposition to such unlawful conduct.

33. The Plaintiff incorporates the preceding and proceeding paragraphs into this paragraph by reference. The Plaintiff was subjected to a hostile work environment based on sex (pregnancy) and disability (disability related to pregnancy) in violation of Title VII of the Civil Rights Act of 1964, Section 701 *et. seq*., as amended, 42 U.S.C.A. 2000e, *et. seq*., 42 U.S.C. Sec. 2000e-5(f)(3), 42 U.S.C. § 2000e-2(a), 42 U.S.C. § 2000e(k), Family Medical Leave Act (FMLA), 29 U.S.C. Sec. 2601 *et seq.*, The Americans with Disabilities Act of 1990 (ADA) and The Americans with Disabilities Act Amendments Act of 2008 (ADAAA), Texas Commission on Human Rights Act, Texas Labor Code, Sections 21.051, *et. seq*. (Discrimination by Employer), Sec. 21.055 (retaliation), Sec. 21.105 (Disability Discrimination), Sec. 21.125 and Sec. 21.128.39.

34. The Plaintiff incorporate the preceding and proceeding paragraphs into this

paragraph by reference. The Defendant's conduct in harassing and demoting Plaintiff violates Title VII of the Civil Rights Act of 1964, Section 701 *et. seq.*, as amended, 42 U.S.C.A. 2000e, *et. seq.*, 42 U.S.C. Sec. 2000e-5(f)(3), 42 U.S.C. § 2000e-2(a), 42 U.S.C. § 2000e(k), Family Medical Leave Act (FMLA), 29 U.S.C. Sec. 2601 *et seq.*, The Americans with Disabilities Act of 1990 (ADA) and The Americans with Disabilities Act Amendments Act of 2008 (ADAAA), Texas Commission on Human Rights Act, Texas Labor Code, Sections 21.051, *et. seq.* (Discrimination by Employer), Sec. 21.055 (retaliation), Sec. 21.105 (Disability Discrimination), Sec. 21.125 and Sec. 21.128.39. The Plaintiff is suffering and will continue to suffer irreparable injury as a result of the acts of Defendant.

## VI.   DAMAGES

35.   Plaintiff seeks liquidated damages under the FMLA and the damages, which are un-liquidated for Plaintiff's other claims of discrimination and retaliation, are within the jurisdictional limits of this Court.

36.   Plaintiff incorporates the preceding and proceeding paragraphs into this paragraph by reference. The conduct described above proximately caused actual and compensatory damage to Plaintiff, including but not limited to lost wages, benefits, humiliation and emotional distress, physical pain and suffering, medical services and medications in the past and in the future, damage to her personal reputation, damage to her professional reputation, damage to her earning capacity, and damage to her enjoyment of life.

37.   Plaintiff is entitled to recover reasonable attorney fees pursuant to EAJA 28 U.S.C. § 2412(b), Title VII, ADA and the FMLA.

**PRAYER FOR RELIEF**

38.   WHEREFORE, Plaintiff requests that this Honorable Court advance this case on

the docket, order a jury trial at the earliest practical date, and grant Plaintiff the following relief pursuant to all state law, federal law and statutes cited in the preceding and proceeding paragraphs, including, but not limited to the following:

(a) Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, and those acting in consort with Defendant, from continuing to violate Plaintiff's rights;

(b) Issue an order requiring Defendant to reinstate Plaintiff to her former job position and/or at a higher position to which she is entitled by virtue of her responsibilities and qualifications or award front pay if such reinstatement is not feasible;

(c) Issue an order awarding Plaintiff back pay, fringe benefits, and any other appropriate relief necessary to make Plaintiff whole and compensate her for the civil rights violations described above;

(d) Award Plaintiff compensatory/mental anguish damages;

(e) Award Plaintiff exemplary damages;

(f) Award Plaintiff prejudgment and post-judgment interest as allowed by law;

(g) Award Plaintiff attorney fees and costs of this suit;

(h) Award Plaintiff liquidated damages;

(i) Award Plaintiff such other legal and equitable relief as this Court deems just and proper;

(j) Award Plaintiff damages requested in part VI of this Complaint;

  (k)  Award Plaintiff all other relief, in law and equity, to which Plaintiff may be entitled.

            Respectfully submitted,

            ____/S/ *Ashok Bail*_____
            ASHOK BAIL
            ATTORNEY-IN-CHARGE

            3120 Southwest Freeway, Suite 450
            Houston, TX 7798
            (713)-255-1088 (Tel)
            (832)-263-0616 (Fax)
            ashok_bail@yahoo.com